IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DAVID BROWN, TARA CROW, MARIO**                      **PLAINTIFFS**
**FOY, DENISE SCOTT, DON HARRIS,**
**ASHLEY MOORE and TIMOTHY GREEN,**
Each Individually and on Behalf of
All Others Similarly Situated

vs.                      No. 4:19-cv-617-LPR

**TRINITY PROPERTY MANAGEMENT, LLC,**
**TRI 5 JACKSONVILLE, LLC, and ANDMARK**
**CHAPEL RIDGE OF CONWAY, LLC**                          **DEFENDANTS**

## **AMENDED ORDER**

Before the Court is Plaintiffs' Motion For Conditional Certification, For Disclosure of Contact Information, and To Send Notices.[1] I have significant concerns about whether collective treatment is legally warranted on the record of this case. But, for the several reasons explained below, I will grant the motion <u>in part</u>.

### I. BACKGROUND

Plaintiffs bring this suit on behalf of themselves and all former and current hourly employees of Defendants.[2] Plaintiffs' collective action claims primarily concern the alleged failure of Defendants to properly calculate and pay minimum and overtime wages.[3] Plaintiffs claim Defendants' conduct violated the Fair Labor Standards Act ("FLSA").[4] Plaintiffs estimate that potential members of the FLSA collective(s) exceed thirty (30) persons.[5] Plaintiffs moved for

---

[1] Pls.' Mot. for Conditional Certification (Doc. 13).

[2] *Id.* at 1-2.

[3] Pls.' Br. in Supp. Mot. for Conditional Certification (Doc. 14 at 10).

[4] Pls.' Amend. Compl. (Doc. 2 at 12) (*citing* 29 U.S.C. §§ 206 and 207).

[5] *Id.* at 9.

conditional certification,[6] alleging that Defendants' hourly employees are "similarly situated" because Defendants "have a uniform policy and practice of improperly paying their hourly employees in violation of [the FLSA]."[7] Attached to the Motion were declarations from five (5) Plaintiffs reiterating several (but not all of the) allegations made in the Amended Complaint.[8]

## II. LEGAL STANDARD

Both Plaintiffs and Defendants appear to accept the two-step inquiry that a substantial majority of district courts (both inside and outside the Eighth Circuit) have adopted to determine whether a collective action may proceed.[9] Specifically, both parties appear to accept that, for purposes of conditional certification at the notice stage, Plaintiffs only need to make a "modest factual showing"[10] in their pleadings and affidavits that they were victims of a single decision, policy, or plan. For the purposes of this case, the Court will assume that the lenient standard applies at the conditional certification stage.[11]

---

[6] Pls.' Mot. for Conditional Certification (Doc. 13).

[7] Pls.' Br. in Supp. Mot. for Conditional Certification (Doc. 14 at 1-2).

[8] Decl. of Ashley Moore (Doc. 13-7); Decl. of Richard Burton (Doc. 13-8); Decl. of Timothy Green (Doc. 13-9); Decl. of Delfred McLennan (Doc. 13-10); Decl. of Denise Scott (Doc. 13-11).

[9] Pls.' Br. in Supp. Mot. for Conditional Certification (Doc. 14 at 3-4); Defs.' Resp. to Pls.' Mot. for Conditional Certification (Doc. 17 at 8). *See also Ford v. Townsends of Ark., Inc*., No. 4:08CV00509 BSM, 2010 WL 1433455, at *3 (E.D. Ark. Apr. 9, 2010) ("The phrase 'similarly situated' is not directly defined by the FLSA and has not been clearly defined by the Eighth Circuit; however, this district and other district courts within the Eighth Circuit have applied a two step approach in determining whether a proposed class is similarly situated. First, there is a notice stage and, second, there is an opt-in merits stage.") (internal citations omitted).

[10] Pls.' Br. in Supp. Mot. for Conditional Certification (Doc. 14 at 6); Defs.' Resp. to Pls.' Mot. for Conditional Certification (Doc. 17 at 8); *see also Ford*, 2010 WL 1433455, at *3; *Helmert v. Butterball, LLC*, No. 4:08CV00342 JLH, 2009 WL 5066759, at *3 (E.D. Ark. Dec. 15, 2009).

[11] In future cases, one or more parties may raise and brief the question of whether an alternative, stricter approach is more consistent with the text, structure, and history of 29 U.S.C. § 216(b) than this lenient majority approach. The Court does not decide that issue today.

III. DISCUSSION

A.   *The Modest Factual Showing*

While it is a very close call in my view, Plaintiffs[12] appear to have just chinned the low bar needed to make a modest factual showing that they were victims of a single decision, policy, or plan that affected themselves and other employees in similar ways. In declarations, five (5) Plaintiffs state that they, and the other unnamed employees they knew, generally worked over forty (40) hours per week.[13] The importance of this is that if Plaintiffs and other employees were working over forty (40) hours in a week, any improperly omitted time during that week will trigger overtime pay violations.

These five (5) Plaintiffs state that Defendants automatically deducted lunch period hours even though these Plaintiffs usually worked during that period.[14] They also state that they spoke to other employees that "it happened to."[15] Though the alleged automated deduction for a lunch period may be a uniform policy that unlawfully affects Plaintiffs and other employees in similar ways, the unlawfulness of this alleged policy depends on whether Defendants were aware that their employees were working through lunch. As Defendants note, the declarations do not allege that "any company policy, or any supervisor instructed them not to take a lunch break."[16] Plaintiffs never state that Defendants knew that Plaintiffs or other employees worked during the lunch period. And what Defendants knew about specific Plaintiffs' lunch period habits may differ

---

[12] Currently, Plaintiffs consist of the seven (7) named plaintiffs and four (4) plaintiffs who have opted in since the Complaint was filed.

[13] Decl. of Ashley Moore (Doc. 13-7 at 2); Decl. of Richard Burton (Doc. 13-8 at 3); Decl. of Timothy Green (Doc. 13-9 at 3); Decl. of Delfred McLennan (Doc. 13-10 at 3); Decl. of Denise Scott (Doc. 13-11 at 2).

[14] *Id.*

[15] Decl. of Ashley Moore (Doc. 13-7 at 2-3); Decl. of Richard Burton (Doc. 13-8 at 3); Decl. of Timothy Green (Doc. 13-9 at 3); Decl. of Delfred McLennan (Doc. 13-10 at 3); Decl. of Denise Scott (Doc. 13-11 at 2-3).

[16] Defs.' Resp. to Pls.' Mot. for Conditional Certification (Doc. 17 at 6).

significantly across the potential collective(s). Were the declarations about lunch deductions the only relevant factual showing, I would likely deny conditional certification. They are not, however, the only factual showings, as Plaintiffs also raise allegations concerning routine subtractions by Defendants from employees' recorded hours.

The Amended Complaint states that "Defendants maintained a policy wherein employees who exceeded forty (40) hours per week had their hours changed to bring them back down to forty (40) hours a week, on a regular basis."[17] The five (5) Plaintiffs that submitted declarations also state that they personally witnessed management shave hours from their own and other unnamed employees' time.[18]

Although not repeated in a declaration, the Amended Complaint specifically alleges that one Plaintiff (Ms. Tara Crow) "refused to make these changes and regional manager for Defendants, Lance Nelson, edited employee hours."[19] The allegation in the Amended Complaint on its own would not have convinced me to conditionally certify. Without any explanation of whether this was an isolated or repeated occurrence, how many employees it affected, and how many locations it took place in, it is of miniscule value in determining whether there was a policy, practice, or plan in place.

However, the allegation concerning Ms. Crow, in conjunction with five (5) other plaintiffs declaring similar (even if less detailed) occurrences across multiple apartment complexes, is just enough to make the necessary modest factual showing. In coming to this conclusion, I emphasize

---

[17] Pls.' Amend. Compl. (Doc. 2 at 6-7).

[18] Decl. of Ashley Moore (Doc. 13-7 at 3); Decl. of Richard Burton (Doc. 13-8 at 3); Decl. of Timothy Green (Doc. 13-9 at 3); Decl. of Delfred McLennan (Doc. 13-10 at 3); Decl. of Denise Scott (Doc. 13-11 at 3).

[19] Pls.' Amend. Compl. (Doc. 2 at 7).

4

again that, under the majority approach adopted for purposes of this case,[20] this Court is applying the "lenient standard" that courts in this Circuit have used at the first stage of the two stage certification process.[21] Defendants' frustration with what are basically cookie-cutter declarations[22] notwithstanding, the Plaintiffs have signed and sworn to them. At this stage, those statements regarding what the Plaintiffs personally witnessed are evidence that must be given weight.[23]

The five (5) Plaintiffs who submitted declarations also state that they were generally not paid for their "on-call" time.[24] And three (3) plaintiffs state that they received credit for their on-premises rent in lieu of some part of hourly wages, but this credit was not considered part of their base pay for overtime calculations as required by 29 C.F.R. § 778.208.[25]

The allegations suggest (at least for the purposes of this conditional certification stage) that there were uniform policies at several apartment complexes that potentially violated the FLSA and had similar (though not necessarily identical) effects on Plaintiffs and other employees. For now, that is enough to conditionally certify the collective action.[26] In reaching this conclusion, I emphasize that the Court is precluded from making determinations about the merits of the parties'

---

[20] *See supra* note 9; *McQuay v. Am. Int'l Group*, No. 4:01CV00661 WRW, 2002 WL 31475212, at *2 (E.D. Ark. Oct. 25, 2002) (noting that "a majority of courts have adopted a two-step process").

[21] *See, e.g., Helmert*, 2009 WL 5066759, at *3 ("In the first stage, or 'notice stage,' courts apply a lenient standard to determine whether persons similarly situated to the named plaintiffs exist and should receive notice."); *Ford*, 2010 WL 1433455, at *3 (stating that the "more stringent factual inquiry" and "stricter standard" is applied in the second stage).

[22] *See* Defs.' Resp. to Pls.' Mot. for Conditional Certification (Doc. 17 at 3-4).

[23] *Helmert*, 2009 WL 5066759, at *4 ("So long as the plaintiffs provide evidence that the proposed class members were victims of the same policy or plan, conditional certification is appropriate.").

[24] Decl. of Ashley Moore (Doc. 13-7 at 2); Decl. of Richard Burton (Doc. 13-8 at 3); Decl. of Timothy Green (Doc. 13-9 at 3); Decl. of Delfred McLennan (Doc. 13-10 at 3); Decl. of Denise Scott (Doc. 13-11 at 2).

[25] Decl. of Richard Burton (Doc. 13-8 at 2-3); Decl. of Timothy Green (Doc. 13-9 at 2-3); Decl. of Delfred McLennan (Doc. 13-10 at 2-3); *see also* Pls.' Amend. Compl. (Doc. 2 at 7).

[26] *Ford*, 2010 WL 1433455, at *3 ("During the notice stage . . . . [c]lass members need not be identically situated."); *Helmert*, 2009 WL 5066759, at *3 ("In the first stage, or 'notice stage,' . . . . [p]laintiffs need not show that members of the conditionally certified class are identically situated.").

claims and defenses at this stage,[27] and that "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees . . . ."[28]

B.     *The Scope of the Collectives*

Plaintiffs' motion as it pertains to the scope of the collectives is granted in part and denied in part.  In their Motion For Conditional Certification, Plaintiffs asked the Court to certify the following collective: "All hourly-paid employees since September 4, 2016."[29]  Previously, in their Amended Complaint, Plaintiffs had suggested certification of two collectives: (1) "All maintenance personnel employed during the three years preceding the filing of the Complaint" and (2) "All office personnel employed during the three years preceding the filing of the Complaint."[30]  The Court believes that conditionally certifying two collectives—one for hourly office personnel and one for hourly maintenance personnel—is the most appropriate course of action at this stage.  But those two collectives are still vastly overbroad in geography and time.  Even under the very lenient standard for conditional certification, there is no basis anywhere in the evidence to suggest that the extensive and widespread groups of individuals covered by these purported collectives are similarly situated to the named Plaintiffs.[31]

As to geography, according to an "incomplete list" provided by Plaintiffs, Defendant Trinity Property Management, LLC owns and/or operates at least one hundred and seventy-one

---

[27] *Ford*, 2010 WL 1433455, at *5 ("[T]he merits of the parties' claims and defenses are not reached at the conditional certification stage."); *Helmert*, 2009 WL 5066759, at *4 ("[T]he Court does not reach the merits of the parties' claims and defenses at the certification stage."); *McQuay*, 2002 WL 31475212, at *1 ("Conditional certification of a collective action and the issuance of notice do not require this Court to adjudicate the merits of plaintiffs' claims").

[28] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

[29] Pls.' Mot. for Conditional Certification (Doc. 13 at 3).

[30] Pls.' Amend. Compl. (Doc. 2 at 10).

[31] *See Helmert*, 2009 WL 5066759, at *17-18 (dismissing claims on behalf of employees at facilities where the plaintiffs were not employed).

(171) apartment complexes in at least twelve (12) states.³² In Arkansas alone, Defendant Trinity Property Management owns and/or operates at least eighty-three (83) apartment complexes dispersed around the State. But even taking the Amended Complaint and the five (5) Plaintiffs' declarations together, Plaintiffs only have factual support to allege problematic pay policies or practices at eight (8) specific apartment complexes—all clustered in or around the greater Little Rock metro area.³³ Indeed, of those eight (8) apartment complexes, only four (4) have more than one Plaintiff currently complaining of allegedly illegal overtime pay policies.³⁴ There is no evidence that the practices or policies that Plaintiffs object to are used in any of Defendants' other apartment complexes or affect workers similarly at those other complexes. Notice should thus be limited to employees who have worked at the eight (8) apartments where Plaintiffs have worked.³⁵

As to time, the earliest that one of the Plaintiffs began working for Defendants was December of 2017.³⁶ Prior to that date, there is no evidence to suggest that Defendants had

---

³² Trinity Multifamily, Managed Properties, https://trinitymultifamily.com/holdings/. *See also* Decl. of Ashley Moore (Doc. 13-7 at 2); Decl. of Richard Burton (Doc. 13-8 at 2); Decl. of Timothy Green (Doc. 13-9 at 2); Decl. of Delfred McLennan (Doc. 13-10 at 2); Decl. of Denise Scott (Doc. 13-11 at 2) (stating that Defendant "Trinity Property Management operates many properties similar to the propert[ies they] worked at; an incomplete list can be found on their website www.trinitymultifamily.com.").

³³ Plaintiffs David Brown, Mario Foy, Denise Scott, Ashley Moore, and Timothy Green worked at the "Tri-Five location in Jacksonville." Pls.' Amend. Compl. (Doc. 2 at 3). Mr. Green also worked at the "Chapel Ridge location in Conway." *Id*. Plaintiffs Tara Crow and Delfred McLennan worked at the Arrowhead location in North Little Rock. *Id.*; Decl. of Delfred McLennan (Doc. 13-10 at 1). Plaintiff Don Harris worked at the "West[b]ridge location" in Little Rock. Pls.' Amend. Compl. (Doc. 2 at 3). Plaintiff Richard Burton states that he worked at "Westbridge, Spanish Rock; Terra Vista, The Villas in Conway; Legacy Point; Chapel Ridge and other properties . . . ." Decl. of Richard Burton (Doc. 13-8 at 1). By cross-referencing the properties Mr. Burton names with the list of Defendants' managed properties on the website that Mr. Burton provides (*id.* at 2) and by disregarding possible punctuation errors in the declaration, it appears that Mr. Burton is referring to the Westbridge apartments in Little Rock, the Spanish Rock apartments in Little Rock, the Terra Vista apartments in Little Rock, the Village apartments in Conway, the Legacy Pointe apartments in Little Rock, and the Andmark Chapel Ridge I&II apartments in Conway.

³⁴ *See id*.

³⁵ *See Love v. Retzer, LLC*, No. 5:13-CV-292-DPM, 2014 WL 11081012, at *1 (E.D. Ark. Nov. 18, 2014) (limiting notice to restaurant territories where plaintiffs were employed).

³⁶ In his declaration, Plaintiff Delfred McLennan stated that he worked for Defendants from December of 2017 until October of 2019. Decl. of Delfred McLennan (Doc. 13-10 at 1). Plaintiff Ashley Moore stated that she worked for Defendants from June of 2018 to July of 2019. Decl. of Ashley Moore (Doc. 13-7 at 1). Plaintiff Richard Burton stated that he has worked for Defendants since August of 2019. Decl. of Richard Burton (Doc. 13-8 at 1). Plaintiff Timothy Green stated that he worked for Defendants from July of 2018 to September of 2019. Decl. of Timothy

7

implemented the offending policies or that any such offending policies affected employees in a similar way. Notice should be limited to employees who worked for Defendants during or after December of 2017.[37]

The two conditionally certified collectives, therefore, must be narrowed to all hourly office personnel and hourly maintenance personnel employed between December of 2017 and the filing of the Complaint at Westbridge apartments in Little Rock, Legacy Pointe apartments in Little Rock, Spanish Rock apartments in Little Rock, Terra Vista apartments in Little Rock, Arrowhead Estates apartments in North Little Rock, Chapel Ridge apartments in Conway, The Village apartments in Conway, and TRI 5 Jacksonville apartments in Jacksonville.

C.     *Notice*

The U.S. Supreme Court has held that, in overseeing the notice process, "courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."[38] I take that mandate for scrupulousness and fairness very seriously, as do other district courts in this State and in this

---

Green (Doc. 13-9 at 1). Plaintiff Denise Scott stated that he worked for Defendants from July of 2018 to April of 2019. Decl. of Denise Scott (Doc. 13-11 at 1). Plaintiffs provide no information about the dates on which Plaintiffs David Brown, Tara Crow, Mario Foy, Don Harris, Tito Williams, or Garyling Childress began working for Defendants.

[37] Even if Plaintiffs had provided evidence of violations preceding December 2017, under the FLSA statute of limitations a cause of action arising out of a willful violation must be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). In a collective action, "the action is commenced when a party files his or her written consent to become part of the action." *Redman v. U.S. W. Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998) (*citing* 29 U.S.C. § 256(b)). Notice should be consistent with the statute of limitations. This Court has limited notice to only those employees who were employed by FLSA defendants within three years of the date the notice is mailed. *See Love*, 2014 WL 11081012, at *1. So even if there was evidence of violations before December of 2017, the maximum reach of the limitations period—assuming individuals opt-in immediately—would extend back only three years from the date of the notice.

[38] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

Circuit.[39] In order to "avoid redundant notice and any conduct that could be interpreted as an endorsement of the lawsuit[,]"[40] Plaintiffs' request to provide the Notice of Right to Join Lawsuit ("Notice"), the Consent to Join form, and a follow-up reminder postcard via traditional U.S. Mail[41] is <u>conditionally</u> granted, with the condition being that Plaintiffs make the following revisions:[42]

1. <u>to the Notice of Right to Join Lawsuit (Doc. 13-1)</u>:

   a. do not use bold font in the sentences beginning with "To:" and "Re:" on page 1;

   b. change the statement in the footer on all pages to read: "**IF YOU WANT TO JOIN THIS LAWSUIT, CONSENT MUST BE RETURNED BY** [insert date that is 60 days after the date that the notice revisions are approved by the Court]";

   c. change the first sentence in section (3) on page 2 to read as follows: "DESCRIPTION OF THE LAWSUIT: Plaintiffs in this case allege that they are current and former hourly-paid employees of Trinity Property Management, LLC, Tri 5 Jacksonville, LLC, and/or Andmark Chapel Ridge of Conway, LLC ("Defendants").";

   d. delete the sentence in section (3) on page 2 stating: "The Court has not ruled on or decided any of the issues, including the merits of the claims or defenses.";

   e. change section (4) on page 2 to read as follows: "<u>COMPOSITION OF THE CLASS</u>: Plaintiffs seek to sue on behalf of themselves and on behalf of all hourly-

---

[39] *See Adkinson v. Tiger Eye Pizza, LLC*, No. 4:19-CV-4007, 2019 WL 5213957, at *8 (W.D. Ark. Oct. 16, 2019); *Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-01293-DGK, 2017 WL 1628974, at *4 (W.D. Mo. May 1, 2017); *Wilson v. PNK (River City), LLC*, No. 4:15CV00380 AGF, 2015 WL 5098716, at *3 (E.D. Mo. Aug. 31, 2015).

[40] *Latcham v. U.S. Pizza Co., Inc.*, No. 4:16-CV-00582 BSM, 2017 WL 5662350, at *3 (E.D. Ark. June 5, 2017).

[41] Pls.' Mot. for Conditional Certification (Doc. 13 at 2).

[42] *See Adkinson,* 2019 WL 5213957, at *8 (ordering "additional language" be included in the notice to "ensure that the notice 'respect[s] judicial neutrality ... [and] avoid[s] even the appearance of judicial endorsement of the merits of the action.'" (quoting *Hoffmann-La Roche Inc.*, 493 U.S. at 174)).

paid office and maintenance personnel who allege that they worked for Defendants between December of 2017 and September 4, 2019 at Westbridge apartments in Little Rock, Legacy Pointe apartments in Little Rock, Spanish Rock apartments in Little Rock, Terra Vista apartments in Little Rock, Arrowhead Estates apartments in North Little Rock, Chapel Ridge apartments in Conway, The Village apartments in Conway, and/or TRI 5 Jacksonville apartments in Jacksonville.";

f. delete the paragraph in section (5) on page 2 stating: "Additional *Consent to Join* forms and information regarding the specific filing requirements are available from Plaintiffs' attorney, Josh Sanford, Sanford Law Firm, PLLC, One Financial Center, 650 South Shackleford Road, Suite 411, Little Rock, Arkansas 72211, (501) 221-0088, josh@sanfordlawfirm.com.";

g. after section (5), insert a new section stating as follows: "<u>JUDICIAL DISCLAIMER</u>: The Court does not encourage or discourage participation in this case.";[43]

h. delete the sentence in section (6) on page 2 stating: "You will not be required to pay attorney's fees directly.";

i. delete the paragraph in section (6) on page 2 stating: "It is important to understand that you may be entitled to recovery just because you worked for Defendants as an hourly-paid employee at some time since September 4, 2016. The Court will make a final decision about whether you are entitled to recover, and for what time period,

---

[43] *See, e.g., id.* ("[O]ut of an abundance of caution, the Court agrees . . . that a judicial disclaimer would prevent any potential confusion related to judicial endorsement. The Court . . . will require Plaintiffs to revise their notice form to include the following language in numbered paragraph 2: 'The Court does not encourage or discourage participation in this case.'").

if any, that you are entitled to recover. The Court has not made those decisions yet.";

j. change section (8) on page 3 to read as follows: "<u>COUNSEL FOR PLAINTIFFS AND COLLECTIVE</u>: If you choose to join this suit, you may choose to be represented either by the named Plaintiffs' attorney, by your own attorney, or by yourself. The attorney for the named Plaintiffs is Mr. Josh Sanford." and delete the following:

> "Mr. Josh Sanford
> Sanford Law Firm, PLLC
> One Financial Center
> 650 South Shackleford Road, Suite 411
> Little Rock, Arkansas 72211
> Telephone: (501) 221-0088
> Facsimile: (888) 787-2040
> E-mail: josh@sanfordlawfirm.com

"You also have a right to hire your own attorney and pursue your potential claims individually. If you sign a *Consent to Join* you agree that the attorney for the class will represent you in this case.";

k. delete section (9) on page 3 in its entirety; and

l. delete section (11) on page 3 in its entirety.

2. <u>to the Proposed Consent to Join Collective Action (Doc. 13-2)</u>:

a. change the consent statement to read as follows: "I worked for Defendants between December 2017 and September 4, 2019. I was an hourly-paid office and/or maintenance personnel employee. I worked at Westbridge apartments in Little Rock, Legacy Pointe apartments in Little Rock, Spanish Rock apartments in Little Rock, Terra Vista apartments in Little Rock, Arrowhead Estates apartments in North Little Rock, Chapel Ridge apartments in Conway, The Village apartments in

Conway, and/or TRI 5 Jacksonville apartments in Jacksonville. I understand that this lawsuit is brought under the Fair Labor Standards Act for <u>unpaid wages</u> and other relief.";

b. delete the last sentence stating: "I consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court.";

c. after the consent statement and before the blank information fields, insert the following checkbox options:

"Check one:

☐ I consent to becoming a party-plaintiff in this lawsuit, and I agree to be represented by Plaintiffs' attorney, Mr. Josh Sanford, Sanford Law Firm, PLLC, One Financial Center, 650 South Shackleford Road, Suite 411, Little Rock, Arkansas 72211, Telephone: (501) 221-0088, Facsimile: (888) 787-2040, Email: josh@sanfordlawfirm.com.

☐ I consent to becoming a party-plaintiff in this lawsuit, but I do not agree to have Plaintiff's attorney represent me and I intend to consult with other counsel. My counsel will file a motion to represent me and be added to the case by [insert date that is 60 days after the date that the notice revisions are approved by the Court].

☐ I consent to becoming a party-plaintiff in this lawsuit, and I will represent myself."[44]

　　d. delete the paragraph with Mr. Sanford's contact information in the lower left corner of the page; and

　　e. change the statement in the footer to read: "IF YOU WANT TO JOIN THIS LAWSUIT, CONSENT MUST BE RETURNED BY [insert date that is 60 days after the date that the notice revisions are approved by the Court]".

3. to the Proposed Text of Electronic Transmissions (Doc. 13-3):

　　a. delete this document in its entirety, as the motion to provide notice by email is denied *infra*.

4. to the Proposed Electronic Consent to Join (Doc. 13-4):

　　a. delete this document in its entirety, as the motion to provide notice by email is denied *infra*.

5. to the Proposed Reminder Postcard (Doc. 13-5):

　　a. remove "SECOND" from the title;

　　b. change the first sentence from "On _____ \_\_, 2020, you were sent a **Notice of Right to Join Lawsuit** informing you of a lawsuit in which you may be a member as an Opt-In Plaintiff." to "On _____ \_\_, 2020, you were sent a notice to inform you of your right to join a lawsuit, in which you may become a member as an Opt-In Plaintiff.";

---

[44] *See Ratliff v. Pason Sys. USA Corp.*, 196 F.Supp.3d 699, 703 (S.D. Tex. 2016) (ordering the consent form to be modified to insert checkboxes to "ensure that potential opt-in plaintiffs are properly apprised of their right to select their own legal counsel").

  c. delete the sentence: "You are being sent this second *Notice* because you have not yet joined the lawsuit."; and

  d. conclude the paragraph with the following sentence: "It is your choice whether to join the lawsuit or not."

Plaintiffs must file the revised Notice, Consent to Join form, and reminder postcard by 12pm on December 18, 2019. Defendants must file any objections regarding Plaintiffs' revisions by 5pm on December 20, 2019. The revised documents will be subject to the Court's final review and approval.

Plaintiffs' request for an order directing Defendants to provide the names and last known mailing addresses of potential opt-in plaintiffs within seven (7) days after the date of the entry of this Order[45] is granted. The Defendants must produce the names and last known mailing addresses of hourly office personnel and hourly maintenance personnel who worked, between December of 2017 and September 4, 2019, at the eight (8) apartment complexes where Plaintiffs worked. The Court directs Defendants to provide this information to Plaintiffs' counsel via Microsoft Word or Excel formatting.

"[E]xercising [its] discretionary authority to oversee the notice-giving process,"[46] the Court concludes that limiting communication to "[m]ailing notice will allow the greatest number of potential class members to receive notice while minimizing redundancy."[47] This also avoids undue invasions of privacy and undue pressure that can come with multiple messages through multiple avenues. Accordingly, Plaintiffs' request to provide the Notice and Consent to Join form via

---

[45] Pls.' Mot. for Conditional Certification (Doc. 13 at 4).
[46] *Hoffmann-La Roche Inc.*, 493 U.S. at 174.
[47] *Israsena v. Chalak M&M AR1 LLC*, No. 4:15CV00038 JLH, 2015 WL 13648567, at *5 (E.D. Ark. Oct. 14, 2015).

email[48] is denied,[49] and its request to distribute a follow-up email[50] is denied.[51] Because notice by telephone or email is not granted, Plaintiffs' request for an order directing Defendants to provide the last known telephone numbers and email addresses of potential opt-in plaintiffs[52] is denied. Plaintiffs' request for an order directing Defendants to "post the Notice in a conspicuous location in the same areas in which it posts government-required notices"[53] is also denied.[54] Finally, Plaintiffs' request for a period of ninety (90) days to distribute the Notice and file Consent to Join forms with this Court[55] is denied. If and when the Court approves the revised Notice and Consent to Join form, the Court will grant a period of sixty (60) days from the date that the approval order is entered to distribute the Notice and file Consent to Join forms. Sixty (60) days is plenty of time to reach potential members of the collectives, and at the same time ensures that this case moves forward expeditiously.[56]

---

[48] Pls.' Mot. for Conditional Certification (Doc. 13 at 2).

[49] *See Latcham*, 2017 WL 5662350, at *3 ("Plaintiffs' request to send notice by email . . . is denied without prejudice to avoid redundant notice and any conduct that could be interpreted as an endorsement of the lawsuit."); *Olsen v. Clay Cty., Ark.*, No. 3:18-CV-00129 BSM, 2018 WL 6004660, at *2 (E.D. Ark. Nov. 15, 2018) (denying plaintiffs' request to send notice by email); *Teramura v. Walgreen Co.*, No. CV 12-5244, 2013 WL 12171862, at *4 (W.D. Ark. Mar. 7, 2013) (denying plaintiffs' request to send notice by email); *Vinsant v. MyExperian, Inc.*, No. 2:18-CV-02056, 2018 WL 3313023, at *6 (W.D. Ark. July 5, 2018) (denying plaintiffs' request to disseminate notice by text message or email in addition to traditional U.S. Mail as "needlessly repetitive and unnecessary").

[50] Pls.' Mot. for Conditional Certification (Doc. 13 at 2).

[51] *See Latcham*, 2017 WL 5662350, at *3 ("Plaintiffs' request to send . . . follow-up or reminder notices by email . . . is denied without prejudice to avoid redundant notice and any conduct that could be interpreted as an endorsement of the lawsuit.").

[52] Pls.' Mot. for Conditional Certification (Doc. 13 at 3).

[53] *Id*.

[54] *See Bonds v. Langston Companies, Inc.*, No. 3:18-CV-00189 KGB, 2019 WL 4673569, at *4 (E.D. Ark. Sept. 24, 2019) (denying plaintiff's request to require defendant to "post the notice in a conspicuous location in the same area in which they post government-required notices"); *Israsena*, 2015 WL 13648567, at *5 (holding that "[t]he defendants need not . . . post the notice" because "the more effective way to reach former employees . . . is by mailing the notice[,]" and because denying the request to post the notice served to "minimize[e] redundancy").

[55] Pls.' Mot. for Conditional Certification (Doc. 13 at 3).

[56] *See, e.g., Allbritton v. Wiggins*, No. 4:13-CV-00158-SWW, 2014 WL 12768317, at *5 (E.D. Ark. Mar. 14, 2014) (granting plaintiffs 60 days to mail notices and file opt-in consent forms with the Court).

## IV. CONCLUSION

Plaintiffs' Motion For Conditional Certification, For Disclosure of Contact Information, and To Send Notices is granted in part and denied in part as set forth above.

IT IS SO ORDERED, this 13th day of December 2019.

<u>Lee P. Rudofsky</u>
UNITED STATES DISTRICT JUDGE